***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Hartford Insurance Company was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an injury on or about December 2, 1999.
5. Plaintiff's average weekly wage was $338.00, which yields a compensation rate of $225.34 per week.
6. The parties stipulated the following documents into the record:
a. I.C. Forms 18, 19, 33, 33R, and 61,
 b. Employee's Answers to Interrogatories and Request for Production of Documents, seventeen pages,
c. Hart Industrial Clinic, three pages,
d. Dr. Kenneth Parish, four pages, and
e. Plaintiff's Criminal Record, six pages.
7. The deposition of Dr. Kenneth L. Parish is a part of the evidentiary record in this case.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following additional
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a twenty-four year old male. In approximately October 1999, he was assigned on work release from the Catawba Prison Unit with defendant-employer. As a laborer, plaintiff's duties included welding and hooking-up metal cages, which were used in the manufacture of concrete and metal corrugated road culverts. The cages were approximately forty-two to forty-six inches in diameter, and were assembled with one on the outside and one on the inside. The combined weight of these cases was fifty pounds. Defendant-employer also used a seventy-two inch cage, but this required a crane to move it.
2. In early November 1999, approximately five weeks prior to his work incident, Plaintiff felt a "twinge" in his groin area, thought something might be wrong, and went to see a doctor at the Newton prison facility for a hernia exam. Plaintiff did not testify that this occurred at work. Plaintiff said the prison doctor indicated there was nothing wrong with him; however, plaintiff did not submit any medical documentation to corroborate his testimony regarding the diagnosis.
3. On December 2, 1999, at approximately 8:45 a.m., plaintiff and a coworker were standing a wire cage on the end when plaintiff felt a tearing and burning sensation in the right side of his groin, about an inch below his belly button. Plaintiff reported this injury to his supervisor, Billy Poteat.
4. Mr. Poteat reported plaintiff's injury to Mike Setzer, the vice president of the employer. Mr. Setzer arranged for plaintiff to be seen at Hart Industrial Clinic.
5. On December 2, 1999, Dr. Eric Hart examined plaintiff and noted the history given by Plaintiff of his injury at work. He referred Plaintiff to general surgeon Dr. Kenneth Parish for the suspected hernia. Dr. Hart indicated Plaintiff could return to work without restrictions.
6. On December 6, 1999, Dr. Parish found plaintiff to have a right inguinal hernia, for which a surgical repair was recommended. On this date, Dr. Parish did not give Plaintiff any work restrictions but instead indicated Plaintiff could work full duty.
7. On December 10, 1999, the carrier filed a Form 61, denying compensability of Plaintiff's claim.
8. Plaintiff returned to work his regular job at full duty the day after the alleged work incident and continued to work until he was terminated by defendant-employer for poor job performance on December 10, 1999.
9. After Plaintiff was discharged by defendant-employer, he was not eligible to continue on work release. However, subsequent to December 10, 1999, and for the last five months he was in prison, plaintiff was assigned to available incentive wage job assignments, such as working as a flagman, for seventy cents per day. The plaintiff was released from prison on May 29, 2000.
10. While Dr. Parish testified that it is possible the hernia could have resulted from the alleged lifting incident at work on December 2, 1999, he stated that he based his opinion completely on the history given to him by Plaintiff and that his opinion was subject to change if it turned out the patient's history was incorrect or incomplete. In fact, Dr. Parish's opinion was based on an incomplete medical history provided by the Plaintiff since the Plaintiff did not inform Dr. Parish during his December 6, 1999, visit that he had experienced similar symptoms approximately five weeks prior to the incident at work on December 2, 1999 and that he engaged in weight lifting while in prison.
11. On July 21, 2000, Dr. Parish reevaluated plaintiff. He found there had been no change in the right inguinal hernia and again recommended a surgical repair of the hernia. At this time, Dr. Parish also indicated that the plaintiff could work without any restrictions. However, the Plaintiff has not had surgical repair of the hernia.
12. Plaintiff has failed to prove by the greater weight of the competent evidence that on 6 December 1999 that the right inguinal hernia did not exist prior to the accident and appeared suddenly immediately following a work-related accident.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. In order for a hernia to be compensable, it must be proven that: (a) there was an injury resulting in a hernia or rupture; (b) the hernia or rupture appeared suddenly; (c) the hernia or rupture immediately followed a work-related accident; and, (d) the hernia or rupture did not exist prior to the accident. N.C.G.S. § 97-2(18)
2. It is essential that the Plaintiff prove all of the elements required under N.C.G.S. § 97-2(18), and the failure to prove the existence of any one of those elements will nullify the claim. Long v.Morganton Dyeing and Finishing Company, 321 N.C. 82, 361 S.E.2d 575
(1987).
3. The Plaintiff has failed to prove by the greater weight of the competent evidence that the hernia appeared suddenly, that the hernia immediately followed a work-related accident, and that the hernia did not exist prior to the accident. N.C.G.S. § 97-2(18).
4. The Plaintiff's claim for a right inguinal hernia, therefore, is not compensable under the provisions of the North Carolina Workers Compensation Act. N.C.G.S. § 97-2(18).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
ORDER
1. Under the law, plaintiff's claim is hereby DENIED.
2. Each side shall bear its own costs due the Commission.
3. Defendants shall pay the expert witness fee of $180.00 to Dr. Kenneth Parish, if not already paid.
This the _____ day of December 2001.
 S/_____________________________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
S/_____________________________ RENEE C. RIGGSBEE COMMISSIONER
S/_____________________________ THOMAS J. BOLCH COMMISSIONER